IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-249-D

| | |
|---|---|
| ABBINGTON SPE, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **ORDER** |
| U.S. BANK, NATIONAL ASSOCIATION, et al., | ) ) ) ) |
| Defendants. | ) ) |

On June 3, 2016, Abbington SPE, LLC ("Abbington" or "plaintiff") filed suit in Onslow County Superior Court against U.S. Bank, National Association ("U.S. Bank") and C-III Asset Management, LLC ("C-III") (collectively, "defendants") alleging various contract and tort claims under North Carolina law [D.E. 1-2] 2–19. On July 11, 2016, defendants removed Abbington's action to this court based on diversity jurisdiction [D.E. 1]. On July 18, 2016, defendants moved to dismiss Abbington's complaint under Federal Rule of Civil Procedure 12(b)(6) [D.E. 7] and filed a memorandum in support [D.E. 8]. Abbington responded in opposition to the motion to dismiss [D.E. 12], and defendants replied [D.E. 15]. On August 9, 2016, Abbington moved to remand the action to Onslow County Superior Court based on a forum-selection clause in the promissory note [D.E. 13] and filed a memorandum in support [D.E. 14]. Defendants responded in opposition to the motion to remand [D.E. 17], and Abbington replied [D.E. 18]. As explained below, the court denies Abbington's motion to remand and grants defendants' motion to dismiss.

I.

In December 2005, Abbington executed a promissory note for $17,500,000 in favor of Wells Fargo Bank, N.A. in order to purchase real property in Onslow County, North Carolina. Compl. [D.E. 1-2] ¶¶ 4–7. Defendant U.S. Bank is the successor-in-interest to that promissory note, and defendant

C-III is the loan's "special servicer." Id. ¶¶ 9–10.

The promissory note contained numerous obligations. First, the note contained a "due-date provision," stating that "principal and interest shall be due and payable thereafter in equal consecutive monthly installments of $100,022.86 each beginning on February 11, 2009, and continuing on the eleventh (11th) day of each and every month" until Abbington repaid the loan. [D.E. 1-2] 25. Additionally, Abbington agreed to an "event-of-default" provision, stating that "[a]n 'Event of Default' shall be deemed to exist if [ ] any sum payable under this Note is not paid on or before the date such payment is due." Id. 28. When "any Event of Default exists . . . interest shall accrue on the outstanding principal balance of the Note at a rate per annum equal to five percent (5.0%) plus the interest rate which would be in effect hereunder absent such Event of Default." Id. The promissory note included a separate "late-fee provision," providing that "[i]n the event that any payment is not received . . . within fifteen (15) days after the date when due, then in addition to any default interest payments due hereunder, Borrower shall also pay to Lender a late charge in an amount equal to four percent (4.0%) of the amount of such overdue payment." Id.

Before June 2015, Abbington made payments on the loan on or before the 11th of each month. Compl. ¶ 17. At some point "[d]uring the term of the loan," Abbington received statements that it claims indicated that there was a "grace period in which payments could be timely received from the 11th of each month through and including the 26th of each month." Id. ¶¶ 15–16; see [D.E. 1-3] 20–23. On June 22, 2015, Abbington tendered a late payment. Compl. ¶ 18. On June 25, 2015, U.S. Bank sent Abbington a letter notifying Abbington that "[t]he Loan is in default based on the Borrower's failure to make payments as and when due," but U.S. Bank "ha[d] chosen not to exercise its rights" at that time. [D.E. 1-3] 25, 34. On June 29, 2015, Deanna Jones ("Jones"), Abbington's controller and vice president of accounting, sent an email confirming that she had spoken to "Peter at C-III Asset Management," that she was aware "[t]he grace period is basically for late fees not to be a[ssessed]," and that "standard procedure [was] to place [the] loan in default if payment is not

2

received by the due date." Id. 32. Jones also confirmed that she knew that the "due date" was the "11th." Id.

In July, August, and September 2015, Abbington again failed to make timely payments. Compl. ¶ 19. On November 6, 2015, U.S. Bank sent a letter to Abbington "accelarat[ing] the outstanding balance of the Note and demand[ing] payment in full." [D.E. 1-3] 29–30; see Compl. ¶ 22. In response, Abbington requested multiple "payoff statements." See Compl. ¶¶ 24–39. On March 3, 2016, subject to a reservation of rights, Abbington paid $16,578,956.99, the amount defendants claimed was due in the third adjusted payoff statement. See id. ¶¶ 37–39; [D.E. 1-3] 92–96.

On June 3, 2016, Abbington filed suit against defendants in Onslow County Superior Court, alleging that defendants violated North Carolina contract and tort law. See Compl. ¶¶ 40–94. Abbington asserted the following claims: (1) breach of contract, id. ¶¶ 40–46; (2) fraudulent misrepresentation, id. ¶¶ 47–53; (3) negligent misrepresentation, id. ¶¶ 54–61; (4) breach of the duty of good faith and fair dealing, id. ¶¶ 62–70; (5) "declaratory judgment determining estoppel and violation of N.C.G.S. § 45-36.7," id. ¶¶ 71–81; (6) unfair and deceptive trade practices in violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1–75.16, id. ¶¶ 82–85; and (7) "unenforceable penalty." Id. ¶¶ 86–94. On July 11, 2016, pursuant to 28 U.S.C. § 1441(b), defendants removed the action based on diversity jurisdiction. See [D.E. 1] 3–4. Defendants then moved to dismiss the complaint, arguing that Abbington failed to state a claim upon which relief can be granted. [D.E. 7]; see Fed. R. Civ. P. 12(b)(6). On August 9, 2016, Abbington moved to remand the action to Onslow County Superior Court based on the forum-selection clause in the promissory note [D.E. 13].

II.

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the [federal] district courts . . . have original jurisdiction[ ] may be removed by

3

the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal courts "construe removal statutes narrowly," and any "doubts concerning removal ... [are] resolved in favor of state court jurisdiction." Barbour v. Int'l Union, 640 F.3d 599, 613 (4th Cir. 2011). The party who removed the action must establish federal subject-matter jurisdiction. See Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014); Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

A defendant may waive its right to remove an action to federal court via "a valid and enforceable forum selection clause that mandates a state court as the forum for a case." Weener Plastics, Inc. v. HNH Packaging, LLC, No. 5:08-CV-496-D, 2009 WL 2591291, at *5 (E.D.N.C. Aug. 19, 2009) (unpublished); see Russell Corp v. Am. Home Assur. Co., 264 F.3d 1040, 1046–47 (11th Cir. 2001); Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1216–18 (3d Cir. 1991); The London Manhattan Co. v. CSA–Credit Sols. of Am., Inc., CA No. 2:08-cv-00465-PMD, 2008 WL 2077554, at *1–3 (D.S.C. May 9, 2008) (unpublished); Advanced Mktg. Int'l, Inc. v. Morgan, No. 5:05-cv-435-OC-10GRJ, 2006 WL 1679219, at *3 (M.D. Fla. June 14, 2006) (unpublished). The rule of unanimity requires a court to remand the entire action even if only one defendant waives the right to remove. Weener Plastics, Inc., 2009 WL 2591291, at *5–6; see Russell Corp., 264 F.2d at 1050; Ondova Ltd. Co. v. Manila Indust., Inc., Civil Action No. 3:07-CV-1812-D, 2007 WL 4104192, at *3–5 (N.D. Tex. Nov. 19, 2007) (unpublished); Advanced Mktg. Int'l, Inc., 2006 WL 1679219, at *3; Black & Decker (U.S.) Inc. v. Twin City Fire Ins. Co., Civil Action No. HAR 92-3352, 1993 WL 56784, at *1, 3–4 (D. Md. Feb. 9, 1993) (unpublished).

The forum-selection clause in the promissory note states:

> Borrower, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, (A) submits to personal jurisdiction in the state where the property is located over any suit, action or proceeding by any person arising from or relating to this note, (B) agrees that any such action, suit or proceeding may be brought in any state or federal court of competent jurisdiction sitting in either the city or the county where the property is

4

located, (C) submits to the jurisdiction of such courts, and (D) agrees that borrower will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the rights of lender to bring any action, suit or proceeding in any other forum) . . . .

[D.E. 1-2] 32–33. Abbington contractually limited its ability to bring suit in any court "sitting" outside Onslow County. According to Abbington, no federal court "sits" in Onslow County. Abbington then argues that because it cannot bring suit in a federal court sitting in Onslow County, defendants cannot remove any action that Abbington filed in Onslow County Superior Court. [D.E. 14] 3–7.

The court disagrees. The forum-selection clause does not address the lender's right to remove an action. See [D.E. 1-2] 32–33. Because the lender did not contractually waive its right to remove, 28 U.S.C. § 1441 governs removal. Complete diversity exists between defendants and Abbington, and the amount-in-controversy exceeds $75,000.00. Thus, defendants properly removed this action. See [D.E. 1]; 28 U.S.C. §§ 1332, 1441. Accordingly, the court denies Abbington's motion to remand.[1]

III.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions,

---

[1] Abbington also argues that "if the action is removed to federal court, [p]laintiff would be prohibited from amending its [c]omplaint to include additional claims against [d]efendants and would be forced to file a separate state action." [D.E. 18] 5. The court disagrees. The Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). Thus, in accordance with the Federal Rules of Civil Procedure, Abbington may seek to amend its complaint.

5

elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Id. In considering the motion, the court may consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Defence v. Trimble Nav. Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

The parties agree that North Carolina law applies to their dispute. See [D.E. 1-2] 33 ("This note shall be interpreted, construed and enforced according to the laws of the state of North Carolina."); [D.E. 8] 8–20; [D.E. 12] 4–19. In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). If the state supreme court "has spoken neither directly nor indirectly on the particular issue" at hand, a federal court must "predict how [the state supreme] court would rule if presented with the issue." Id. (quotations omitted). In making that prediction, a federal court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Id. (quotation omitted).[2] When predicting an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Abbington's first claim alleges that defendants breached the promissory note because later-delivered account statements "amended the terms" of the promissory note and provided that "a

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

6

payment would not be late if made prior to the 26th of each month and [that] a default would not occur as long as payment was timely made." Compl. ¶¶ 40–46; see [D.E. 1-2] 28. Because defendants "declar[ed] Plaintiff to be in default" despite receiving all payments before the 26th of each month and charged Abbington accordingly, Abbington contends that defendants breached the amended promissory note. Compl. ¶¶ 42–44. Defendants respond that the promissory note "unambiguously required Plaintiff to deliver monthly payments of principal and interest on the eleventh (11th) day of each and every month" and that any subsequent communication from defendants did not alter this requirement. See [D.E. 8] 2–3 (quotation omitted).

"[T]he terms of a contract are to be interpreted according to the expressed intent of the parties unless such intent is contrary to law." Offiss, Inc. v. First Union Nat'l Bank, 150 N.C. App. 356, 363, 562 S.E.2d 905, 910 (2002); see Lane v. Scarborough, 284 N.C. 407, 410–11, 200 S.E.2d 622, 624 (1973); Duke Power Co. v. Blue Ridge Elec. Membership Corp., 253 N.C. 596, 602, 117 S.E.2d 812, 816 (1961). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "When the parties use clear and unambiguous terms, such contracts can be interpreted by the court as a matter of law." Robertson v. Hartman, 90 N.C. App. 250, 252, 368 S.E.2d 199, 200 (1988).

A breach-of-contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 29, 530 S.E.2d 838, 845 (2000). A breach of a contract occurs where there is "'[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him.'" Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (quoting Blount-Midyette v. Aeroglide Corp., 254 N.C. 484, 488, 119 S.E.2d 225, 228 (1961)).

The promissory note states that "[p]rincipal and interest shall be due and payable thereafter

7

in equal consecutive monthly installments of $100,022.86 each beginning on February 11, 2009, and continuing on the eleventh (11th) day of each and every month thereafter through and including December 11, 2015." [D.E. 1-2] 25 (emphasis added). The promissory note then specifies in the event-of-default clause that default occurs if "any sum payable under this Note is not paid on or before the date such payment is due." Id. 28 (emphasis added). Where such an event occurs, the lender may demand acceleration of payment of the loan's balance and charge default interest. Id. Additionally, if payment of any amount due is not received within fifteen days of the 11th, the late-charge clause applies, allowing the lender to separately apply a "late charge in an amount equal to four percent (4.0%) of the amount of such overdue payment" that is "in addition to any default interest payments." Id. (emphasis added).

The terms of the promissory note are clear and unambiguous. See Robertson, 90 N.C. App. at 252, 368 S.E.2d at 200. The event-of-default clause, triggered when the borrower pays after the 11th of each month, is distinct from the late-charge clause, applicable when the borrower pays after the 26th of each month. Therefore, under the promissory note, payments are due by the 11th of each month. Insofar as Abbington argues that defendants breached the terms of the unamended promissory note when they determined that payments after the 11th of each month were untimely and that those payments triggered the event-of-default clause, the argument fails.

Abbington's argument concerning the account statements also fails. See [D.E. 1-3] 20–23. Parties to a contract may agree to alter the contract's terms or conditions. Lewis v. Edwards, 147 N.C. App. 39, 49, 554 S.E.2d 17, 23 (2001). However, the "effect of a modification to a contract is the production of a new agreement," and new consideration from each contracting party must accompany any modification. Id., 554 S.E.2d at 23. Assuming without deciding that the account statements attached to the complaint communicate a promise from defendants to enforce the event-of-default clause only if Abbington made payments after the 26th, Abbington has failed to allege any new consideration on its part to support modifying the unambiguous terms of the promissory note.

8

See id., 554 S.E.2d at 23; Lee v. Paragon Grp. Contractors, Inc., 78 N.C. App. 334, 338, 337 S.E.2d 132, 134–35 (1985). Absent new consideration, defendants' alleged promise to enforce terms different than the terms in the promissory note cannot form the basis of a breach-of-contract claim. See Lee, 78 N.C. App. at 338, 337 S.E.2d at 135. Accordingly, Abbington's first claim fails.

In its second and third claims, Abbington alleges that defendants' account statements fraudulently or negligently misrepresented (1) that defendants would not invoke the event-of-default clause if Abbington made payments before the 26th of each month and (2) that late fees would not apply if Abbington made its payment before the 26th of each month. Compl. ¶¶ 47–61. To state a fraud claim, a plaintiff must plausibly allege "(1) [a] false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," where "any reliance on the allegedly false representations must be reasonable." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007); Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992). To state a negligent-misrepresentation claim, a plaintiff must plausibly allege that he "(1) . . . justifiably relie[d], (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." Brinkman v. Barrett Kays & Assocs., 155 N.C. App. 738, 742, 575 S.E.2d 40, 43–44 (2003) (quotation omitted); Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).

In a negligent-misrepresentation claim, the "question of justifiable reliance is analogous to that of reasonable reliance in fraud actions." Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 224, 513 S.E.2d 320, 327 (1999) (quotation omitted). For both causes of action, whether the plaintiff reasonably relied on the defendant's representations is ordinarily a question for the jury "'unless the facts are so clear as to permit only one conclusion.'" Id. at 224–25, 513 S.E.2d at 327 (quoting Restatement (Second) of Torts § 552 cmt. e (1977)) (emphasis omitted). One scenario where the facts permit only one conclusion arises when a plaintiff alleges misrepresentations that are

9

"directly contrary" to the express terms of a written contract. Reliance on such misrepresentations is unreasonable as a matter of law. Int'l Harvester Credit Corp. v. Bowman, 69 N.C. App. 217, 219–220, 316 S.E.2d 619, 621 (1984); see Davis v. Davis, 256 N.C. 468, 471–73, 124 S.E.2d 130, 133–34 (1962); Isley v. Brown, 253 N.C. 791, 793–94, 117 S.E.2d 821, 823–24 (1961); Eastway Wrecker Serv., Inc. v. City of Charlotte, 165 N.C. App. 639, 645–46, 599 S.E.2d 410, 414 (2004), aff'd, 360 N.C. 167, 622 S.E.2d 495 (2005); Allied Personnel of Raleigh, Inc. v. Alford, 25 N.C. App. 27, 30–31, 212 S.E.2d 46, 48–49 (1975); see also Am. Chiropractic v. Trigon Healthcare, Inc., 367 F.3d 212, 234–35 (4th Cir. 2004); Foremost Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118, 125–26 (4th Cir. 1990); Solum v. Certainteed Corp., 147 F. Supp. 3d 404, 411–12 (E.D.N.C. 2015); Caper Corp. v. Wells Fargo Bank, N.A., No. 7:12-CV-357-D, 2013 WL 4504450, at *6–7 (E.D.N.C. Aug. 22, 2013) (unpublished), aff'd, 578 F. App'x 276 (4th Cir. 2014) (per curiam) (unpublished); SunTrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 484–86 (W.D.N.C. 2009). This principle comports with the "duty to act with reasonable prudence for [one's] own safety." Davis, 256 N.C. at 471–72, 124 S.E.2d at 133. "One who signs a written contract without reading it, when he can do so understandingly, is bound thereby unless the failure to read is justified by some special circumstance." Id., 124 S.E.2d at 133.

As for Abbington's claim that defendants represented that late fees would not apply to payments made before the 26th, this representation comports with the terms of the promissory note and therefore is not a misrepresentation. See [D.E. 1-2] 28 ("In the event that any payment is not received by Lender within fifteen (15) days after the date when due, then in addition to any default interest payments due hereunder, Borrower shall also pay to Lender a late charge . . . ."). As for Abbington's claim that defendants represented in the account statements that defendants would not invoke the promissory note's event-of-default clause for payments made after the 11th but before the 26th, the promissory note contradicts any suggestion in the account statements that an event of default would not occur if Abbington paid after the 11th but before the 26th. Compare [D.E. 1-2] 25, 28,

10

with [D.E. 1-3] 20–24. Abbington could have learned the truth about its obligation to pay by the 11th of each month by reading the promissory note. Cf. Davis, 256 N.C. at 471–72, 124 S.E.2d at 133; Stunzi v. Medlin Motors, Inc., 214 N.C. App. 332, 340, 714 S.E.2d 770, 777 (2011) (holding that "one who signs a paper writing is under a duty to ascertain its contents" and "is held to have signed with full knowledge and assent as to what is therein contained"). In fact, the complaint and attached documents reveal that Abbington did inquire into the terms of the promissory note and that defendants explained that the promissory note's "grace period" was "basically for late fees not to be a[ssessed]," not for "default." See Compl. ¶¶ 18–19; [D.E. 1-3] 32. Nonetheless, Abbington failed to make timely payments after its first late payment. See Compl. ¶ 19. Thus, Abbington's fraud and negligent misrepresentation claims fail.

In its fourth claim, Abbington alleges that defendants breached the "implied term in the Note, Deed of Trust[,] and Loan Agreement" to "act in good faith" by "demanding improper fees and amounts for default interest, additional noteholder costs and late charges in the payoff statement." Id. ¶¶ 62–70. Under North Carolina law, every contract contains "an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quotation omitted). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of [a] claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (applying North Carolina law); Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (same), aff'd, 18 F. App'x 147 (4th Cir. 2001). Accordingly, when a court dismisses a breach-of-contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in it. SunTrust Bank v. Bryant/Sutphin Props., LLC, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012) (holding that it "would be illogical . . . to conclude that plaintiff somehow breached implied terms of [a] contract[ ]"

11

when the court had earlier rejected the breach-of-contract claim). Additionally, North Carolina recognizes "a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, [such as] cases involving contracts for funeral services and insurance." Ada Liss Grp. (2003) v. Sara Lee Corp., No. 1:06CV610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009) (unpublished) (quotations omitted), report and recommendation adopted by 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010). "Outside such circumstances, actions for breach of good faith fail." Id.

As discussed, Abbington has failed to state a claim for breach of contract. Abbington's complaint also fails to allege any special relationship between it and defendants. Even if the complaint included such an allegation, "an ordinary debtor-creditor relationship generally does not give rise to" a fiduciary relationship. Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 60–61, 418 S.E.2d 694, 699 (1992). "Rather, parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the [Uniform Commercial Code]." Id. at 61, 418 S.E.2d at 699; see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347–48 (4th Cir. 1998); Highland Paving Co. v. First Bank, 227 N.C. App. 36, 43, 742 S.E.2d 287, 292–93 (2013). A fiduciary duty arises only when the first party reposes "a special confidence" in the second party, resulting in "domination and influence" by the second party. Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707–08 (2001). Accordingly, Abbington's fourth claim fails.

In its fifth claim, Abbington seeks a declaration that defendants are "estoppped from claiming that they are entitled to default fees" and a declaration that defendants' payoff letters were deficient under North Carolina General Statute § 45-36.7. See Compl. ¶¶ 71–81. Abbington brings this claim under the Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 et seq. Id. ¶ 81. The Declaratory Judgment Act allows "[a]ny person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise" to have "determined any question of construction

12

or validity arising under the instrument, statute, ordinance, contract, or franchise" and to "obtain a declaration of rights, status, or other legal relations thereunder." N.C. Gen. Stat. § 1-254. "Although the North Carolina Declaratory Judgment Act does not state specifically that an actual controversy between the parties is a jurisdictional prerequisite," North Carolina law "impose[s] such a requirement." Sharpe v. Park Newspapers of Lumberton, Inc., 317 N.C. 579, 583, 347 S.E.2d 25, 29 (1986); see Conner v. N.C. Council of State, 365 N.C. 242, 258, 716 S.E.2d 836, 846 (2011). Declaratory relief "is designed to establish in an expeditious fashion the rights, duties and liabilities of parties in situations usually involving an issue of law or the construction of a document where the facts involved are largely undisputed." Hobson Constr. Co., Inc. v. Great Am. Ins. Co., 71 N.C. App. 586, 588–89, 322 S.E.2d 632, 634 (1984).

Abbington's fifth claim is confusing. If Abbington claims that defendants' payoff letters violate N.C. Gen. Stat. § 45-36.7, it is unclear why Abbington does not seek to proceed directly under that statute. See N.C. Gen. Stat. § 45-36.7(j) (providing for "any actual damages caused by the failure [to comply], but not punitive damages," and "attorney's fees"). Likewise, it is unclear why Abbington seeks declaratory relief regarding the propriety of defendants' demand for default interest, late charges, and other fees in addition to its claims that this conduct constituted, among other things, breach of contract, fraud, and negligent misrepresentation. In any event, Abbington's request for declaratory relief requires this court to adjudicate questions of fact related to past damages, as opposed to legal questions that clarify the parties' ongoing relationship. As such, declaratory relief is inappropriate. See Galvatubing, Inc. v. Commonwealth Aluminum Tubes Enters., LLC, Civil No. 1:09CV3, 2009 WL 962254, at *7 (W.D.N.C. Apr. 7, 2009) (unpublished) ("The Declaratory Judgment Act is inappropriate to adjudicate past conduct, such as when damages have already accrued." (quotation omitted)). Additionally, North Carolina law bars Abbington from using promissory estoppel to obtain affirmative relief. See Home Elec. Co of Lenoir, Inc v. Hall & Underdown Heating & Air Conditioning Co., 86 N.C. App. 540, 544–45, 358 S.E.2d 539, 542 (1987),

aff'd, 322 N.C. 107, 366 S.E.2d 441 (1988); see also Melvin v. Principi, No. 5:03-CV-968-FL(3), 2004 WL 3769429, at *10 (E.D.N.C. Dec. 2, 2004) (unpublished). Accordingly, Abbington's fifth claim fails.

In its sixth claim, Abbington alleges that defendants' acts concerning the promissory note violated North Carolina's UDTPA. Compl. ¶¶ 82–85. To state a UDTPA claim, Abbington must plausibly allege that (1) defendants committed an unfair or deceptive act or practice, (2) the act or practice was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. N.C. Gen. Stat. §§ 75-1.1, 75-16; Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton, 353 N.C. at 656, 548 S.E.2d at 711; RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). An act is deceptive if it has a tendency or capacity to deceive. Dalton, 353 N.C. at 656, 548 S.E.2d at 711; Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). An act is unfair if "it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation omitted) (emphasis removed); Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902–03 (4th Cir. 1996). "Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." Kelly v. Georgia-Pac., LLC, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009) (collecting cases). A mere breach of contract does not violate the UDTPA. See, e.g., PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 475–76 (E.D.N.C. 2013); Branch Banking & Tr. Co., 107 N.C. App. at 61–62, 418 S.E.2d at 700.

In its complaint, Abbington does not identify any particular acts as unfair or deceptive, but merely incorporates the allegations in its complaint into its UDTPA claim. In opposing defendants' motion to dismiss, Abbington argues that:

> Defendants falsely represented to Plaintiff that payments would [not] be late unless they were made after the 26th and consequently represented that payments made after

14

> the 11th of the month, but before the 26th would be considered timely under the agreement between the parties. This representation has been shown to be false by Defendants' charging of late fees for payments made after the 11th, but before the 26th. Plaintiff has adequately stated the deceptive conduct of Defendants. Taking the facts in the light most favorable to Plaintiff, the allegations of the claim for Unfair and Deceptive Trade Practice is sufficiently pled and Defendants' motion should be denied.

[D.E. 12] 15.

Insofar as Abbington contends that defendants breached the promissory note and thereby violated the UDTPA, a mere breach of contract does not violate the UDTPA. See PCS Phosphate Co., 559 F.3d at 224; Branch Banking & Tr. Co., 107 N.C. App at 61–62, 418 S.E.2d at 700. Insofar as Abbington contends that defendants stated that Abbington would not incur late fees for payments made before the 26th, this statement comports with the promissory note's unambiguous terms and is not deceptive. See [D.E. 1-2] 28 ("In the event that any payment is not received by Lender within fifteen (15) days after the date when due, then in addition to any default interest payments due hereunder, Borrower shall also pay to Lender a late charge...."). Insofar as Abbington contends that defendants stated that payment after the 11th would not trigger the event-of-default clause, Abbington was contractually obligated to make payments by the 11th of each month in order to avoid an event of default. The promissory note plainly stated this obligation, and defendants reminded Abbington of this fact after the June 22, 2015 late payment. Thus, the allegedly deceptive account statements "did not have the capacity to deceive a reasonable businessperson." RD & J Props., 165 N.C. App. at 749, 600 S.E.2d at 501. Accordingly, Abbington's sixth claim fails.

Abbington's seventh claim alleges that the promissory note contains an "unenforceable penalty" because the "late charges and default interest are a fixed penalty" and "do not relate to Defendants' actual damages in the event of default." Compl. ¶¶ 86–94. Abbington's complaint fails to cite any statute or precedent in support of its claim. See id. In opposing defendants' motion to dismiss, Abbington clarifies that it relies on N.C. Gen. Stat. § 24-8 to support its seventh claim. See [D.E. 12] 14.

15

Section 24-8 provides restrictions on the interest, fees, and charges permitted in certain loans. See N.C. Gen. Stat. § 24-8. Section 24-8 does not apply, however, to "exempt loans," where the "amount is three hundred thousand dollars ($300,000) or more" or where the "borrower is a person other than a natural person." N.C. Gen. Stat. § 24-9(a)(3). In such cases, "any borrower . . . may agree to pay, and any lender, including a bank, may charge and collect from the borrower, interest at any rate and fees and other charges in any amount that the borrower agrees to pay." Id. § 24-9(b). "A claim or defense of usury is prohibited in an exempt loan transaction." Id.

Abbington's complaint states that the promissory note involved a loan for an amount greater than $300,000 and that Abbington is a "limited liability company." Compl. ¶¶ 1, 4; see [D.E. 1-2] 24. Accordingly, Abbington's seventh claim fails.

IV.

In sum, the court DENIES plaintiff's motion to remand [D.E. 13], GRANTS defendants' motion to dismiss [D.E. 7], and DISMISSES plaintiff's complaint without prejudice. Plaintiff shall have until November 21, 2016, to file an amended complaint. If Abbington fails to file an amended complaint by that date, the clerk shall close the case.

SO ORDERED. This **27** day of October 2016.

JAMES C. DEVER III
Chief United States District Judge